Good morning, Chief Judge Pryor, Your Honors, may it please the Court, my name is Terrant Stowes, I represent the appellant, Clifford Laines, Jr., and I'd like to focus on the Brady information about Jordi Yanez Martel, who is the only witness that was able to justify the stop, arrest, and search of Mr. Laines. Through the duration of this conversation, I intend to demonstrate two points. First, the evidence undermines Mr. Yanez's credibility with respect to his official police duties, and more specifically, with respect to the circumstances surrounding the arrest and search of Mr. Laines. And second, with this evidence, the defense and the proceedings below reasonably would have been able to suppress all of the evidence of the government on counts three through five. Yeah, it seemed to be the problem with all this is that this is impeaching evidence and that none of it really has to do with whether the defendant was guilty or innocent. Well, there's two things. Number one, with respect to your question on impeachment, impeachment is a cognizable use of Brady information, and the case law says that. With respect to the exculpatory part, we have cited Espinosa-Hernandez, USP Espinosa-Hernandez, which recognizes that when you have a situation like this, an officer who testifies at trial on a material point, and he has a history of lying in a criminal matter, then that information may yield some additional information that he may have perjured himself, not just in an unrelated proceeding, but also in this case as well. And the fact that I'm referring to is the BOLO, the fact of its existence, or alternatively, the actual description of the BOLO. That's why he's important. And without the BOLO, there would not have been an arrest. Without the arrest, there would be no search and discovery of the evidence. Without the evidence, there's no case. And so, in large measure, his testimony on this BOLO is central to the government's case. Now, when we presented this information below to the district court, she considered it as well as the rest of the information in the record, and what she found is that Yanis Martel has now been discredited. And that's important, because it's reasonable to assume that, had this information been presented to her on the front end of the trial, as opposed to the back end, she would have reached the same conclusion. And with that, well, actually, first, let me say this. And on top of that, there was no independent evidence of the BOLO that was presented below. The transmission of the BOLO wasn't presented. The 911 call was destroyed. And so, there really was no indicia of reliability of this BOLO, and therefore, there's a reasonable probability that, had it been presented to the chief judge below- There was no body cam footage? There was no body cam footage. There was body cam footage of the post-arrest circumstances, but- Well, I thought it was their approach to him, his flight from them, their pursuit of him, and then the arrest as it occurred, no? All of that was preceded by Yanis Martel's observation of him as he was slowly rolling by them, and based on the evidence in the record, it seems that he may not have even noticed them. And Yanis Martel- Your argument, though, is that the initial stop was illegal, right? That's ultimately what we would have argued in the motion to suppress, is that there was not sufficient grounds to make the initial stop, whether you want to characterize it as a Terry stop-and-frisk for further investigation, which ultimately leads to the discovery of evidence, or as they described it in their testimony, a full-blown arrest with a search incident to a purportedly lawful arrest. Counsel, can I turn your attention for a moment to the ACCA question regarding stereoisomers? Would you address that, please? Yeah, well, we believe that the Florida, excuse me, the Florida statutes more broadly encompasses what an isomer would be as opposed to what it would be under federal law, and therefore there is no categorical match between the two. The government says in its brief that there are only two types of stereoisomers, and that's optical and geometric, so the Florida law encompassing any stereoisomer, in fact, includes exactly what the federal law includes. That appears to just, that appears to be right. Right, but I believe that we've also asked that the court stay this particular issue, given that Jackson and McCobb are still out for disposition. Yeah, it just seems to me that it might be irrelevant, if the government's right about that. Well, the issue was actually briefed in McCobb, but McCobb was still pending Jackson. The two types of isomers listed under federal law are the only types, right? So when the Florida law says any stereoisomer, it's saying the same thing, isn't it, regardless of all that, everything that precedes the argument. I think the issue in McCobb was that, based on scientific evidence, that may not necessarily be the, or excuse me. Counsel, I'm sorry to interrupt, but can I just ask you a question about whose burden it is on the sentencing to prove that the substance from the prior conviction is covered under, for ACCA? Is it the government's burden to prove that? Or is it your burden to prove it's not covered, since we're on direct appeal? Well, I believe that the standard review is actually de novo, and I think that's what we've cited. And in terms of whose burden it is to prove that, I would believe it would be the government's. Because we're on direct appeal, right? Right. So is there evidence in the record that the government presented that the two definitions at that time were equal to each other? I don't believe so. I think they were just speaking generally about the issue, Your Honor. And like I said, McCobb more fully explains all of that. So we were asked that, to the extent that you believe that is an important issue, that you at least stay at this position on that argument pending the resolution of Jackson and in turn McCobb, Your Honor. And just returning back to this particular issue, because I see I have only two minutes left, or two minutes and 40 seconds left. I believe that whether we're talking about a motion to suppress, or whether this had to come up in trial, and we had to go before the jury, when you have the district court saying this gentleman has now been discredited. He's caused one of the biggest breaches of public trust, and specifically as to how he handles arrests. One of the incidents was that he made false statements in a police affidavit regarding an arrest that he made only two months before trial. So with that, plus the absence of any independent corroborating evidence of the BOLO, we do believe that there's a reasonable probability we would have prevailed on a motion to suppress. And to the extent that the motion would have been denied, and we would have had to take this to trial because we wouldn't be foreclosed from presenting this on cross-examination, then we could still argue, we could still challenge the arrest before the eyes of the jury. And given that the chief judge BOLO found that he's no longer worthy of credence, it's reasonable to assume that the jury might have as well. And when we look at cases that we cited like Arnold v. McNeil and Espinosa-Hernandez, what they tell us is that because he's a key witness on this critical point, then they may actually, the jury, take a dimmer view at some of the other discrepancies. Let me stop you for a second and just ask you, what's at the heart of the misconduct? Is it that he looked at the cell phone without legal authority, or that there were the subsequent investigations that involved him? I'm talking about the government witness, the officer. Is it the one, the other, or a combination of both as you see it? We see it as a combination of both. And Kyle's tells us that we look at these disclosures and their cumulative effect. But what we believe is perhaps the most egregious, and definitely, by itself, warranting a new trial in counts three through five, is the fact that the government was asking the jury to believe the word of a man about the circumstances leading up to arrest, though this same person was untruthful about the circumstances regarding other arrests. Right. The reason I'm just trying to separate between looking at the phone without legal authority and subsequent information about subsequent wrongdoing is the bulk of the other information was developed post-trial, right? The misconduct alleged was before or after? The misconduct was before trial, and I see the- All of it? No, you can just answer my question. Was all of it before? No, the misconduct regarding the bolo was before trial. Right. That's the singular issue, really, rather than the alleged investigations of the officer that came up later. Well, that would be important if we have a second trial, but without this bolo, then we wouldn't even be talking about any other evidence, including the warrantless search of the cell phone. Thank you, Your Honor. Ms. Hoffman. Good morning, Your Honors. Andrea Hoffman on behalf of the United States. At counsel table with me is one of the trial counsels, Shane Butler. Your Honors, I would start with addressing what counsel thought was his most important issue, the disclosures regarding Yanis Martel. I'm sorry, and I definitely want to hear about that too, but can I ask you to start with a stereoisomer issue? Absolutely, Your Honor. Whose burden is it to show that this is covered? It would be the government's, Your Honor. And where in the record can we find the evidence that the two definitions meet up with each other? Your Honor, this was an unobjected issue at district court, so we're on a plain error review standard, so the record's not developed in the manner that the court might have preferred to have had. That's true. That's absolutely true. But also, this is a legal issue. It is, Your Honor. Because what was presented at trial, or at sentencing, was the PSI that incorporated his underlying convictions and the information that was detailed in it that the court adopted and relied upon. Having had no objections, independent documents to support or prove that particular paragraph of the PSI were not brought into the court because it was an unchallenged issue and it was accepted as fact. Now, based on how you then interpret that underlying conviction, Your Honor's own opinion in FIFER is what I would turn to as the guiding opinion, which at page 37 is what defines stereoisomers as optical and geometric. Your opinion in FIFER is dealing with, I can't say the words, I apologize, I have terrible pronunciation, an ethanol-ish kind of drug. And it went on to discuss positional isomers, but that's under the constitutional framing of isomers, not stereoisomers. So as Judge Pryor said a moment ago, based on your case law, stereoisomers are geometric and optical isomers in the Eleventh Circuit, and it is an established factor. So it was not proved independently at trial because it was unobjected to and before this court is a plain error review. That's issue aside, turning to the misconduct allegations, particularly regarding Yanis Martel. These are what arose regarding this particular defendant, or excuse me, witness, occurred three months after the arrest of the defendant. There were only two of the incidents occurred before the arrest and trial, more importantly the trial of this defendant. No parties were aware that it had occurred at the time of the trial. Both parties had made requests for Brady Giglio materials from the Miami Gardens Police Department. The defense counsel, as they represent in their own brief, had received an answer that there was nothing. The government hadn't received an answer. So the parties went to trial legitimately having no idea that there was anything out there. When it became relevant, it is, as Judge Pryor again, thank you, said, it's cumulative and or impeaching materials that were discovered after the fact. In the case law for a new trial motion, cumulative slash impeaching materials would not be something that would warrant a reversal of a conviction in this court's law. Starting there. The person who had the altercation with the defendant and who reported him to the police, who was the source for the be on the lookout, testified at trial? He did testify at your trial, Your Honor. He described the two incidents he had, or actually three incidents in two days that he had with this defendant. He identified the defendant in the courtroom. He established that he knew it should match the alert. It does, Your Honor. And he established that he'd known him for a long time. So it wasn't a, you know, and he also identified him in a photo array. He came to the police station, an independent police officer testified. She put the, she didn't put it together, but she executed the photo array with this defendant with this witness. And that photo array was admitted in evidence. So the Bolo is corroborated in addition slightly, not as, not as directly on point, Your Honor, but is slightly also corroborated by the police officer who responded to the shooting incident where the witness was shot in the ear by the defendant. So that police officer had received a similar description of the defendant absent the bicycle because the bicycle had not been in motion at that moment. Am I right? I asked your, your adversary, everything afterwards is captured on the video footage, right? Everything afterwards, Your Honor, the, everything of the, of significance of the day of this event for the charges of counts three through four were in the video from the first sight of Yanis Martel, seeing him through the officers chasing, et cetera. All of that is on body cam, which is ultimately why the district court has made determinations repetitively on motions for mistrial or motions for new trial, that the evidence in this case is overwhelming. We're not often so fortunate as to have the entirety of the charge conducts on body cam. If there are no other questions for the government, we will rest on our briefs. We've asked that you affirm the convictions. Thank you, Ms. Hoffman, Mr. Stoes. You've saved five minutes. May it please the court. Mr. Chief Judge Pryor, one of your last questions was about the source of the witness, and I'll begin there. Am I, am I right about that, that that person testified at trial? He testified at trial, indeed. He testified with respect. Did his description match that of the alert? The bicycle was not, so this is the problem with the witness, Your Honor, is that if we're talking about trial, and we're not even talking about the motion to suppress, let's fast forward to trial, is that he was a key witness on count two, and defense, trial, or excuse me, the defense, the defense's trial attorney did an excellent job in exposing all of the inconsistencies and lack of credibility. Here's just what I'm trying to figure out. Is there any, the government says there's no evidence to suggest that this officer lied about his reason for pointing out your client, and, and it, and, and what I raised about this, about this witness suggests that that's right. Not only is there no evidence that he was lying about that, in fact, the, what evidence we do have is, is to the contrary. Quite the opposite, Your Honor. This witness was found to be uncredible by the jury. They acquitted Mr. Lanes of count two, and so there's a reasonable inference that they did not believe what that witness had to say. You couple that with the fact that the point of Brady is to allow the information to come to light with enough time for the defense to prepare, and part of that preparation potentially could have been interviewing, doing another interview, or even a government re-interviewing. Whether the source of the information was lying or not doesn't tell me whether the officer was lying. Right. But if that source, in fact, had given the officers that information that resulted in a be on the lookout, right, it may be that the source of the information is not telling the truth. But if that's what the source was saying, then it certainly supports the notion that the officer had a reason for pointing out the suspect. But again, Brady is about how the information could potentially cast the case in a different light. And when we're talking about, at its inception, the source being unreliable, and then we talk about an officer, and we're looking at the case law, U.S. v. Espinosa-Hernandez and Arnold v. McNeil, it was adopted as thorough and well-reasoned, and Your Honor sat on the panel for that. What they tell us is that when we have this information about somebody, an officer who that he was dealing with around the trial, and one of them dealt with lying about something within the federal context, and here, this is more compelling, because he lied about the circumstances surrounding an arrest. So again, it's about how that is going to impact the psyche of the jury if we're talking just about the jury itself, not even the motion to suppress, even though we think that we had sufficient grounds for a motion to suppress. But if we're talking just about what the jury is hearing, and we know that the jury has already found the source itself to be not worthy of credence, and then we have the district court finding that Giannis Martel is not worthy of credence, it's reasonable to assume that the jury would have seen all of this differently, and that's the reasonable probability sufficient to undermine the confidence in this case. And I see I have one minute left, and I'll just close on that point, is again, this now-disgraced, criminally-charged former police officer was an integral point to the government even being able to bring this case in the first instance, and he no longer has any sort of worthiness in terms of whether he's telling the truth and can be trusted about what happened when he makes an arrest, yet he comes in and he asks the jury to believe that point. But if the district court has found that he can no longer be worthy of credence, and under the Kyle standard about undermining confidence in the outcome, then the only thing that is left is for us to conclude that we can no longer be confident in the outcome. So with that, I'll rest on our briefs, and also ask that to the extent the court deems it appropriate that you stay disposition of the Isomer issue pending the resolution of Jackson and McCobb. Thank you. Thank you, Mr. Stoes. We'll move to the next case.